IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEFFREY LORENZEN,<br><br>        Plaintiff,<br><br>    vs.<br><br>TASTE TRADITIONS OF OMAHA, L.L.C.,<br><br>        Defendant. | **8:16CV27**<br><br>**MEMORANDUM AND ORDER** |

Defendant has moved to extend the deposition deadline as to Dr. Sunil Bansal and to declare Dr. Bansal as unavailable for trial. ([Filing No. 58](#)). For the reasons stated below, the court finds that for the purposes of his intended testimony, Dr. Bansal was not untimely disclosed as a witness and Defendant has shown good cause for deposing him beyond the deposition deadline. As to whether Dr. Bansal will be permitted to testify by deposition at trial, if Dr. Bansal must testify live, the trial date will be re-set to accommodate his schedule.

FACTUAL BACKGROUND

On September 10, 2013, Defendant extended an offer to employ Plaintiff as a warehouse supervisor, provided Plaintiff passed a physical examination indicating he was capable of performing the job. As to Defendant, pre-employment physical examinations are performed by Horizon Rehabilitation & Occupational Care Center ("Horizon"). Plaintiff's examination was performed on September 13, 2013, and at that time, Plaintiff completed a physical questionnaire listing of his medical conditions and restrictions. On the questionnaire, Plaintiff stated he was unable to perform over-head or "out-in-

front" work with his arms, and he could not lift more than 50 pounds. The examination confirmed these restrictions, and perhaps more.

Defendant claims that to perform the essential functions of the warehouse supervisor position, the employee must be able to regularly and frequently:
- lift up to and above fifty pounds;
- perform overhead work;
- perform out-in-front of body work;
- exert up to seventy-five pounds of force occasionally; and
- bend, squat, walk, stand, and reach.

([Filing No. 37 at CM/ECF p. 16](), ¶ 41). After considering Plaintiff's restrictions, Defendant retracted its job offer.

Three days later, on September 16, 2013, Plaintiff was examined by Doctor Sunil Bansal ("Bansal"), for a workers compensation case against a different employer. ([Filing No. 47-2]()). During this examination, Plaintiff described the following subjective symptoms and limitations:

Neck:
> Plaintiff reported or demonstrated decreased range of motion when turning his head from side to side.

Back:
> Plaintiff reported:
> - increasing problems with intermittent back pain, particularly when plaintiff is in awkward positions;
> - an ability to tolerate lifting 50 pounds occasionally, perhaps 20 pounds frequently; and

- when his back pain gets bad, he is not able to do anything but lie down.

Knees:

Plaintiff reported he has:
- progressively increasing left knee pain when he is on his feet;
- constant right knee pain, which gets worse the longer he is on his feet;
- bilateral knee pain which progressively increased when he was switched to a position requiring him to be on his feet all day long; and
- an ability to tolerate lifting 50 pounds occasionally, perhaps 20 pounds frequently.

Lifting:

Plaintiff reported he is able to lift approximately 50 to 60 pounds using both arms from the floor to waist level, but he is unable to perform:
- lifting or arm motions more than occasionally.
- a sustained lift overhead—he has to set the object down right away; and
- repetitive assembly line work.

As to his left arm only, Plaintiff reported:
  - if he had to lift overhead, he is able to lift about two to five pounds occasionally, but definitely not repetitively; and
  - he is able to lift 20 pounds occasionally, and about 5 to 10 pounds if he had to lift frequently.

As to his right arm only, Plaintiff reported he can lift 50 to 60 pounds with his right arm if his left arm is used solely to stabilize the load.

3

Postural limitations:

> Plaintiff reported:
> - he can walk for approximately 20 to 30 minutes, but then has to sit down and rest;
> - he avoids climbing ladders because it is painful and he does not trust his knees and does not want to fall off; and
> - he is unable to crawl on his hands and knees.

([Filing No. 47-2 at CM/ECF p. 7-8](#)).

When deposed in August of 2016, Plaintiff confirmed that in September 2013, he was unable to perform "out-in-front" work with his arms. ([Filing No. 37-2, at CM/ECF p. 42](#), lines 3-23). This admission was in response to questioning about statements Plaintiff made to Dr. Bansal on September 16, 2013. In response to further questioning about the symptoms Plaintiff reported to Dr. Bansal, Plaintiff's counsel stated: "We would stipulate that it–that the report says what it says." ([Filing No. 37-2, at CM/ECF p. 44](#), lines 3-4). In response, defense counsel stated "Sounds good," and stopped examining Plaintiff about his statements to Dr. Bansal.

In Plaintiff's motion for summary judgment filed on February 15, 2017, he claims his only permanent restriction in September 2013 arose from a rotator cuff tear which "substantially limits his ability to lift more than ten pounds above shoulder level with his left arm or perform repetitive movement at or above shoulder level with his left arm." ([Filing No. 34, at CM/ECF p. 5](#)). And in his brief opposing Defendant's motion for summary judgment filed on March 15, 2017, Plaintiff objects to Defendant's use of Dr. Bansal's report as inadmissible hearsay, irrelevant, and lacking foundation. ([Filing No. 48, at CM/ECF p. 80](#)).

4

After reviewing Plaintiff's summary judgment arguments, Defendant wants to call Dr. Bansal as a fact witness (not an expert) at trial. Dr. Bansal is a Medical Director who supervises seven clinics and performs physicals for over 500 employers in the Iowa and Nebraska region. Due to his schedule, he was unavailable to be deposed after Defendant received Plaintiff's brief on March 15, 2017, and before the April 14, 2017 deposition deadline. Dr. Bansal states that due to his extensive schedule, he cannot attend the trial currently scheduled for July 17, 2017. When he does provide live trial testimony, he charges $8000.

## ANALYSIS

Plaintiff alleges Defendant violated the ADAAA by failing to consider possible accommodations before retracting the offer to hire Plaintiff as a warehouse supervisor. To establish a prima facie case for disability discrimination under the ADAAA, the plaintiff must prove he was: 1) a disabled person within the meaning of the ADA; 2) qualified to perform the essential functions of the job, with or without accommodation; and 3) suffered an adverse employment action because of his disability. E.E.O.C. v. Product Fabricators, Inc., 763 F.3d 963, 969 (8th Cir. 2014); Olsen v. Capital Regional Med. Ctr., 713 F.3d 1149, 1152 (8th Cir. 2013). If Plaintiff presents a prima facie case, Taste Traditions must articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. Product Fabricators, 763 F.3d at 969. If it does so, the burden shifts back to Plaintiff to demonstrate that the proffered reason is merely pretext for intentional discrimination. And if Plaintiff prevails on showing liability, he will seek damages, including recovery for "mental and emotional distress; humiliation; fear; embarrassment; lost enjoyment of life; lost wages;

5

benefits; and other emoluments of employment." ([Filing No. 1-1, at CM/ECF p. 6](#), ¶ 40).

Plaintiff's self-reported restrictions, as reflected in Dr. Bansal's report in the worker's compensation case, are clearly relevant to deciding whether Plaintiff was able to perform the warehouse supervisor position in September of 2013, with or without accommodations. If Plaintiff proves disability discrimination, Plaintiff's statements to Dr. Bansal are also relevant to assessing damages; for example, a reasonable jury could conclude that even had Plaintiff started the warehouse supervisor job, he would not have done it for long, thus limiting any claim for lost wages. And if Plaintiff's trial testimony disavows or contradicts his statements to Dr. Bansal as reflected in that report, Dr. Bansal's testimony could be used to impeach Plaintiff.

Defendant wants to introduce Dr. Bansal's testimony to either impeach Plaintiff or to introduce his self-reported statements of pain- and mobility-induced restrictions, all of which are based on Plaintiff's subjective statements with medical testing to confirm. As to Plaintiff's statements, Dr. Bansal is a fact witness and not an expert. As a fact witness chosen to refute an element of Plaintiff's claim, he did not have to be disclosed until it was apparent his testimony would be needed; in this case, when Plaintiff stated in his summary judgment brief that his restrictions were less than reported in his deposition and far less than reported to Dr. Bansal. As an impeachment-only witness, Dr. Bansal did not have to be disclosed prior to trial. The court therefore finds that for the purposes described, and as limited to Plaintiff's subjective complaints and his performance during Dr. Bansal's examination, Dr. Bansal was not untimely disclosed as a defense trial witness—particularly where Plaintiff has possessed a copy of Dr. Bansal's report from the outset of this case.

Plaintiff argues any deposition of Dr. Bansal at this time is untimely; that Defendant could have deposed Dr. Bansal long ago for trial purposes. Based on a review of Plaintiff's deposition, Defendant was duly diligent in examining Plaintiff regarding Dr. Bansal's statements during Plaintiff's deposition, and from the representations of Plaintiff and his counsel, believing those statements would not be controverted. Dr. Bansal's testimony was unnecessary until it became clear, in the summary judgment briefs, that Plaintiff planned to disavow the statements he purportedly made as referenced within Dr. Bansal's report. At that point, Defendant promptly attempted to schedule Dr. Bansal's trial deposition, but could not get it calendared before the deposition deadline.

The court finds Defendant has shown good cause for requesting the trial deposition of Dr. Bansal beyond the court-imposed deposition deadline. In contrast, with the trial still over two months away, Plaintiff will not be prejudiced if the court permits the deposition to be taken.

The final question is whether Dr. Bansal can appear at trial by deposition; that is, whether he is "unavailable" for the purposes of using his deposition testimony at trial. As to this question, the court notes that Dr. Bansal performs, among other things, the health care service of conducting employment physicals and if that service is disrupted, the livelihood of others may also be disrupted. Therefore, if Dr. Bansal must testify live, the trial will be re-scheduled to accommodate his attendance. The parties are encouraged to discuss these issues fully before the telephonic conference ordered below.

IT IS ORDERED:

1) Defendant's motion, ([Filing No. 58](#)), is granted in part as stated above.

2) A telephonic conference with the undersigned magistrate judge will be held on May 4, 2017 at 9:00 a.m. to discuss whether the trial needs to be re-scheduled to accommodate Dr. Bansal's attendance. Counsel shall use the conferencing instructions assigned to this case, (see Filing No. 13), to participate in the call.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.