## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEFFREY LORENZEN, | |
| Plaintiff, | 8:16-CV-27 |
| vs. | |
| TASTE TRADITIONS OF OMAHA, L.L.C., | MEMORANDUM AND ORDER |
| Defendant. | |

Taste Traditions of Omaha, L.L.C., the defendant, rejected plaintiff Jeffrey Lorenzen's application for employment because, according to Taste Traditions, he was physically incapable of doing the job. Lorenzen claims that in doing so, Taste Traditions violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA).[1]

This case turns on two separate, but related questions: (1) whether Lorenzen could perform the "essential functions" of the job he sought, with or without accommodation, and (2) what functions of the job were actually "essential." The Court finds that Lorenzen could not have performed the essential functions of the job, with or without accommodation, within the physical limitations he reported to Taste Traditions. Accordingly, the Court will grant Taste Traditions' motion for summary judgment.

---

[1] Lorenzen also alleges violations of the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 *et seq.*, but those claims are coextensive with Lorenzen's ADA claims, and need not be addressed separately. *See Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007).

BACKGROUND

Lorenzen was injured in 2010 in a work-related accident at a previous employer, when a heavy object fell on his left shoulder. Filing 34 at 2.[2] His doctor initially imposed work restrictions of: no overhead work, no work more than 18 inches from the body, and no lifting more than 50 pounds. Filing 34 at 2. But after surgery in 2011 to repair his rotator cuff, Lorenzen's orthopedic surgeon imposed new permanent restrictions when he reached maximum medical improvement in August 2012: no lifting more than 10 pounds above shoulder height, and no repetitive work above shoulder level with his left arm. Filing 34 at 3; filing 35-2 at 22. Another surgery was performed in November 2012 by a different surgeon, who completed a form in December 2012 authorizing Lorenzen to return to work, but restricting him from any use of his left arm. Filing 34 at 3; filing 47-5 at 1.[3] (The form does not indicate whether that restriction was meant to be temporary or permanent.) Lorenzen's first orthopedist avers, and has provided a form from

_____

[2] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

[3] Lorenzen objects to the surgeon's medical record, which was subpoenaed by Taste Traditions' counsel, on evidentiary grounds. Filing 50 at 4-5. But the standard at the summary judgment stage is not whether the evidence would be admissible at trial—it is whether it *could* be presented at trial in an admissible form. *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). An admissible form of Lorenzen's medical records is not hard to imagine—Lorenzen does not actually assert that the medical record is inauthentic, nor does he argue that it could not be presented at trial in an admissible form. *See id.*

June 2013 suggesting, that both surgeons agree on the propriety of the August 2012 permanent restrictions. *See* filing 35-2 at 2, 38.[4] Lorenzen still suffers from pain in his left shoulder.[5] Filing 34 at 3.

Lorenzen applied for the position of "Warehouse Supervisor" with Taste Traditions in May 2013. Filing 34 at 3. Taste Traditions produces packaged food products, such as soup and macaroni and cheese, for the food service industry, retail and deli market, convenience stores, and the U.S. military. Filing 37 at 9. The job posting described the job's responsibilities as: "prepare bill of lading; schedule trucks; oversee sales orders picking and fulfillment; Monitor product labeling/shipping/receiving, and oversee picking of samples and prepare paperwork. Skills required: Computer and Warehouse management." Filing 37 at 10. Jeff Souba, Taste Traditions' president and general manager, was interested in hiring Lorenzen, interviewing him and showing him around the facility. Filing 37 at 10. But Lorenzen was not

---

[4] Taste Traditions objects to this evidence on grounds that are comparable to the grounds asserted by Lorenzen in objection to the medical records proffered by Taste Traditions. *Compare* filing 46 at 6 *with* filing 50 at 4-5. When it comes to evidentiary rulings, what's good for the goose is good for the gander: for the same reasons, the Court accepts the evidence proffered by both parties.

[5] Taste Traditions has also presented evidence of an independent medical evaluation that was performed a few days after Lorenzen's application for employment was rejected, and that examination resulted in yet another set of permanent restrictions that are arguably more restrictive than the August 2012 limitations. *See* filing 37-12 at 13. Lorenzen disputes the admissibility of that evidence. Filing 48 at 37, 80-81. For reasons that will become clear, the Court need not consider that evidence—for purposes of determining whether Taste Traditions complied with its duty under the ADA, the limitations *reported to* Taste Traditions are more significant than Lorenzen's underlying physical condition.

satisfied with the salary offered, and the parties could not come to an agreement. Filing 34 at 3; filing 37 at 10.

In July 2013, Lorenzen responded to a job posting from a staffing agency for a "warehouse support" position. Filing 37 at 10. The posting described the job as: "inventory control, shipping and receiving, scheduling of trucks, picking products, processing bill of lading, running the label machine, and various other tasks in the warehouse as needed." Filing 37 at 11. And the posting described the job's qualifications, which included: "previous experience in a supervisory or managerial role; previous experience in a cold work environment; ability to lift 50 lbs.; must be forklift certified; ability to understand basic math concepts; bilingual in Spanish is a plus." Filing 37 at 11. Lorenzen interviewed with the staffing agency and thought the position was similar to what he had interviewed for with Taste Traditions. Filing 37 at 11; filing 48 at 14. Lorenzen asked the LSI interviewer whether the job was with Taste Traditions and was told it was. Filing 49-1 at 34. In August 2013, Lorenzen contacted Souba again about the warehouse supervisor position. Filing 34 at 4. This time, they agreed to a salary, and Lorenzen was offered employment conditioned on a pre-employment physical examination. Filing 34 at 4; filing 37 at 12.

Lorenzen was examined on September 13, 2013, by Benjamin Deutschman, a physical therapist. Filing 34 at 4. Lorenzen disclosed his medical history, which included a 2008 neck fusion, his rotator cuff surgeries, left knee replacement, bunionette surgery in 2013, and chiropractic care for a back injury. Filing 34 at 4. Lorenzen also reported that he had restrictions of no overhead work, no lifting more than 50 pounds, and no work out in front of his body. Filing 34 at 5; filing 37 at 19; filing 37-10 at 3. Deutschman found that Lorenzen's cervical range of motion was not within functional limits

because of his neck fusion, and that the range of motion in Lorenzen's shoulder was not within functional limits. Filing 37 at 19; filing 37-10. Deutschman opined that the results of testing indicated "a direct threat to employee of developing physical limitations based on job requirements." Filing 37; filing 37-10 at 5.[6]

Taste Traditions' controller, who handled some human resources responsibilities and coordinated the company physicals, was provided with the results of Lorenzen's physical examination—and, importantly, the limitations he reported—on the same day. Filing 34 at 5. Taste Traditions had not been aware of Lorenzen's medical history and limitations before then. Filing 37 at 20. Lorenzen met with Souba and the controller to discuss Lorenzen's restrictions. Filing 34 at 6. After the meeting, Souba discussed the situation with Taste Traditions' chief operating officer, then Souba advised Lorenzen that Taste Traditions would not hire him. Filing 37-3 at 7.

After exhausting his administrative remedies, Lorenzen filed this suit. Filing 1-1. Summarized, Lorenzen alleges three claims: disability discrimination, failure to accommodate his disability, and retaliation against

---

[6] Lorenzen objects that Deutschman's opinion lacks foundation because he was not informed of the job requirements and did not consider the possibility of accommodation. Filing 48 at 33. It is an affirmative defense to an ADA claim if the plaintiff posed a "direct threat" to the health or safety of others that cannot be eliminated by reasonable accommodation. *See* *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007) (citing 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r)). But despite using the term "direct threat," the Court does not understand the form completed by Deutschman to have addressed whether Lorenzen's condition posed a "direct threat" to the "health or safety of *others*" within the meaning of § 12111(3). (Emphasis supplied.) Rather, the form asked whether there was a "direct threat" to *Lorenzen* of developing physical limitations. In other words, while "direct threat" may be a term of art in ADA litigation, that is not the sense in which the term was used on Deutschman's evaluation form.

him for requesting an accommodation. *See* filing 1-1.[7] Taste Traditions moves for summary judgment as to all three claims. Filing 36. In addition, Lorenzen moves for partial summary judgment as to whether he had a disability for ADA purposes. Filing 33.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and

---

[7] In his summary judgment briefing, Lorenzen also suggests that Taste Traditions violated the ADA's employment entrance examination provision, 42 U.S.C. § 12112(d)(3), by requiring Lorenzen to take a pre-employment physical, and when Taste Traditions' controller disclosed Lorenzen's medical record to Souba. Filing 48 at 72-73. Taste Traditions persuasively explains why this argument lacks merit. Filing 51 at 28-29. But more importantly, the Court sees nothing in Lorenzen's operative complaint that could be read to assert such claims. *See* filing 1-1. And while "the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004); *see Rodgers v. City of Des Moines*, 435 F.3d 904, 910 (8th Cir. 2006).

the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id*. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id*. In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

An employer may not refuse to hire a qualified individual because he has a disability. *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 933 (8th Cir. 2012). An employer also discriminates against an applicant or employee if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1059 (8th Cir. 2016). Discrimination under the ADA encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability—the former requires proof of discriminatory intent, while the latter does not. *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014).

To establish a prima facie case of disability discrimination, a plaintiff must show: (1) that he was disabled, (2) that he was qualified to do the essential job function with or without reasonable accommodation, and (3)

that he suffered an adverse action due to his disability. *Dick*, 826 F.3d at 1059. To support a failure to accommodate claim, the plaintiff must establish both a prima facie case of discrimination based on disability and a failure to accommodate it. *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016). In this case, the parties do not really dispute that Lorenzen was disabled. Nor is there any dispute that he suffered an adverse action when Taste Traditions refused to employ him because of his physical condition. So, Lorenzen's prima facie case turns on whether he was qualified to do the essential functions of the job, with or without reasonable accommodation. The parties disagree about both the possibility of accommodation and the essential functions of the job.

## Reasonable Accommodation

Failure to accommodate claims are analyzed under a modified burden-shifting analysis, meaning that in some instances the employer may be required to prove the essential functions of the job or show that it was unable to accommodate the employee. *Dick*, 826 F.3d at 1059.

> Under the modified burden-shifting approach, the employee must first make a facial showing that he has an ADA disability and that he has suffered an adverse employment action. Then he must make a facial showing that he is a "qualified individual." To be a "qualified individual" within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation. In cases where the employee claims that he is able to perform the essential functions of the job with a

- 8 -

> reasonable accommodation, the employee must only make a facial
> showing that a reasonable accommodation is possible. When the
> employee has made that facial showing, the burden then shifts to
> the employer to show that it is unable to accommodate the
> employee.

*Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008) (quotations and citations omitted). The plaintiff's burden, upon a defendant's motion for summary judgment, is only to show that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases. *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004). Upon such a showing, the employer is left to show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances. *Id.*

The most pertinent principle here is that Lorenzen must make a facial showing that reasonable accommodation is possible and that the accommodation will allow him to perform the essential functions of the job.[8] *Kallail*, 691 F.3d at 932. In attempting to make that showing, Lorenzen argues that his only medical limitation is that he cannot lift more than 10 pounds above shoulder height with his left arm. Filing 48 at 56-57. Lorenzen points to the affidavit of his orthopedic surgeon, who avers that Lorenzen's "rotator cuff tear substantially limits his musculoskeletal system and permanently substantially limits his ability to lift more than ten pounds

---

[8] Lorenzen contends that there is direct evidence of discrimination in this case, meaning that a burden-shifting analysis is unnecessary. Filing 48 at 54. But regardless, an ADA plaintiff must meet the threshold requirement that he is a "qualified individual" with a disability. *See Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1107 (8th Cir.), *cert. denied,* 137 S. Ct. 256 (2016); *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009); *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 677 (8th Cir. 1996).

above shoulder level with the left upper extremity or perform repetitive movement at or above shoulder level with the left upper extremity." Filing 35-2 at 2.

But it is not disputed that Taste Traditions was informed, *by Lorenzen*, that his limitations were more substantial. And Taste Traditions was entitled to rely on that information. The Eighth Circuit addressed a comparable circumstance in *Alexander v. Northland Inn*, in which the issue was whether a housekeeping supervisor could perform the essential function of vacuuming. 321 F.3d 723, 726-27 (8th Cir. 2003). In that case, the employee had doctor-imposed physical limitations, including the prohibition, "No vacuuming." *Id.* at 726. She was terminated because she could not perform this essential function, but when she talked to her doctor after her termination, her doctor told her, "If you are able to vacuum just to go ahead." *Id.* The Eighth Circuit affirmed summary judgment in the employer's favor, explaining:

> [The employer] was entitled to rely and act upon the written advice from [the employee]'s physician that unambiguously and permanently restricted her from vacuuming. In this situation, the employee's belief or opinion that she can do the function is simply irrelevant. The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden. *Also irrelevant is the fact that the physician told [the employee], after termination, that she could go ahead and vacuum. [The employer] was reasonable in relying on his earlier definitive command, "No vacuuming."*

*Id.* at 727 (emphasis supplied); *see also Otto v. City of Victoria*, 685 F.3d 755, 758 (8th Cir. 2012).

Similarly, in this case, Taste Traditions was reasonable in relying on Lorenzen's self-reported limitations. Lorenzen suggests that Taste Traditions should have undertaken an "individualized assessment" of his condition by obtaining his medical records, communicating with his doctor, or asking Lorenzen to ask his physician for a vocational opinion. Filing 48 at 57.[9] But Lorenzen cites no authority for the novel proposition that an employer has a legal duty to disbelieve a job applicant who reports a disability.[10]

---

[9] In making that argument, Lorenzen argues that Taste Traditions shouldn't have relied on Deutschman because Taste Traditions "cannot delegate its legal duties to a third party to perform an individualized assessment and escape liability. . . ." Filing 48 at 61. The gravamen of this argument seems to be that Deutschman did not accurately assess whether Lorenzen could perform the essential functions of the job. See filing 48 at 61-65. But it is evident that Deutschman's job wasn't that of a vocational expert—instead, he was simply asked to evaluate Lorenzen's physical capabilities so Taste Traditions could assess his ability to do the job. The Court is aware of no authority suggesting that the ADA requires an employer to perform physicals in-house.

[10] Lorenzen also argues more broadly that Taste Traditions failed to engage in the "interactive process" required to determine whether an accommodation is necessary and, if so, what that accommodation might be. Filing 48 at 70. But to show that an employer did not engage in an interactive process, the employee must prove that (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 906 (8th Cir. 2015). As will be explained below, the Court finds no evidence that a reasonable accommodation was available—and under the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process. Scruggs v. Pulaski Cty., Ark., 817 F.3d 1087, 1094 (8th Cir. 2016). The mere failure of an employer to engage in the interactive process does not give rise to per se liability. Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002).

Under the ADA, it is unlawful "not to make reasonable accommodation to the *known* physical or mental limitations of an otherwise qualified applicant or employee with a disability." 29 C.F.R. § 1630.9(a) (emphasis supplied). Discrimination occurs when the employer fails to abide by a legally imposed duty, and the duty to reasonably accommodate is triggered by the known disability. *Peebles*, 354 F.3d at 767. And where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations. *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 470 (8th Cir. 2007); *see Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 846 (8th Cir. 2015).

That proposition is usually applied where the existence of a disability is not apparent, or the disability is more severe than is known to the employer. *E.g. Rask*, 509 F.3d at 470. But it is equally applicable in the other direction. It was Lorenzen's initial burden to identify his disability and resulting limitations, and the scope of Taste Traditions' duty to accommodate those limitations is defined by the notice it was given.

That determination has significant consequences for the rest of Lorenzen's argument. As Taste Traditions summarizes what it says are the requirements of the position:

> The Warehouse Supervisor position is a working position requiring the supervisor to perform a variety of physical tasks. It is not a desk job. The supervisor performs the same work as the employees he or she supervises and often does so alone at the end of the day. Plaintiff would have been required to receive and unload pallets containing approximately two-thousand pounds of

raw materials from trucks, by using a manual jack or electric jack, when available. Plaintiff would have been required to break down and organize pallets containing raw materials individually weighing from five to fifty-five pounds. Plaintiff would have been required to pull and deliver raw materials to the production department. In addition, Plaintiff would have been required to perform the repetitive motion of printing labels and staging finished products.

Filing 37 at 33-34 (citation omitted); *see* filing 37-17 at 2-5. Taste Traditions asserts that "[t]o perform these tasks, Plaintiff would have been required to exert significant force, and to bend, squat, and reach down or over his head, while carrying raw material that weighed between five and fifty-five pounds. Plaintiff would also be required to perform side-to-side and out-in-front of body work." Filing 37 at 34.

Lorenzen argues that only one of these tasks would violate his physical restrictions—but that argument rests on the assumption that his *only* limitation is on lifting more than 10 pounds above his shoulder with his left arm. Filing 48 at 61. He also argues that accommodations were available for his limitations, because a forklift could have been used to avoid overhead lifting—but, again, that argument is premised on overhead lifting being his only limitation. Filing 48 at 63-64. Lorenzen proffers no argument with respect to a limitation of lifting no more than 50 pounds or, most pertinently, no "out-in-front" work. *See* filing 48. And Souba averred quite specifically about a number of tasks performed by the Warehouse Supervisor requiring lifting weight, applying force, and performing out-in-front of body work. *See*

filing 37-17 at 4-5.[11] Lorenzen offers nothing explaining how these tasks could have been accommodated. *See* filing 48.

Lorenzen does suggest, briefly, that the functions outlined in Souba's affidavit could have been delegated to other warehouse personnel. Filing 48 at 62. But while job restructuring is a possible accommodation under the ADA, an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee. *Kallail*, 691 F.3d at 932. An accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated under the ADA. *Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 813 (8th Cir. 2015); *see Hill v. Walker*, 737 F.3d 1209, 1217 (8th Cir. 2013). And Souba explained that the responsibilities at issue could not have been delegated because that would have required delegating most if not all of the job's responsibilities; "[t]he small size of Taste Traditions requires all warehouse personnel to engage in the work at hand;" and the "Warehouse Supervisor is, at times, the only employee working in the warehouse department. . . ." Filing 37-17 at 9. Lorenzen did not meaningfully contradict that evidence.

---

[11] Lorenzen suggests that because Souba is an "interested witness," his affidavit is categorically inadmissible. Filing 48 at 83. A court deciding a summary judgment motion should set aside any evidence supporting the moving party that is not "uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000). But "[p]arties to civil litigation usually have relevant evidence to offer," and "[s]imply dismissing such evidence as 'self-serving' is precisely the sort of 'metaphysical doubt' that will not suffice to oppose summary judgment." *Gannon*, 684 F.3d at 792 (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

- 14 -

ESSENTIAL FUNCTIONS OF POSITION

Lorenzen also argues that some of the tasks identified by Taste Traditions are not actually essential functions of the position. Filing 48 at 61-62. Although an employee retains the ultimate burden of persuading the trier of fact that he or she can perform the essential functions of a position, much of the information which determines those essential functions lies uniquely with the employer. *Kallail*, 691 F.3d at 930. So, an employer has the burden of showing a particular job function is an essential function of the job. *Rehrs*, 486 F.3d at 356.

Essential functions are the fundamental job duties of the employment position. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). They do not include the marginal functions of the position. *Id*. In determining whether a job function is essential, the Court considers, among other things:

> (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents on the job; and/or (vii) the current work experience of incumbents in similar jobs.

*Kallail*, 691 F.3d at 930 (quoting 29 C.F.R. § 1630.2(n)(3)). But while the employer's judgment about an essential job function is considered highly probative, it is not conclusive. *Minnihan*, 779 F.3d at 812. After all, were conclusive weight given to the employer's opinion on this issue, any employer would escape ADA liability simply by defining job duties in a manner that

excludes disabled employees. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 787 (8th Cir. 2004).

Here, however, Lorenzen's argument is again limited to tasks that violate his "permanent restriction of lifting over shoulder height." Filing 48 at 61. He does not address whether other tasks, implicating his other reported limitations, were essential. *See* filing 48. And Souba's affidavit is particularly relevant with respect to those other tasks because, in addition to being the president and general manager of the company, he had performed the Warehouse Supervisor job himself before the position was finally filled in late 2013. Filing 37-3 at 12-13.

Lorenzen points to the affidavit of Johan Streck, who had eventually been hired to fill the position.[12] Filing 48 at 62. Generally summarized, Streck averred that he rarely performed many of the "essential" tasks identified by Souba. Filing 49-7. But while Streck disagreed with Souba on several points, "rarely" is not the same as "never." Streck averred, among other things, that he "only engaged in physical work maybe 10 to 20 percent of the time during [his] tenure at Taste Traditions; it did not involve manual lifting of product above 55 pounds; and rarely involved lifting anything above shoulder height." Filing 49-7 at 3-4. "The only time [he] performed any physical work was when the individuals that [he] supervised needed assistance, which was maybe ten or twenty percent of the entire time that [he] worked for Taste Traditions." Filing 49-7 at 4.

But a task may be an essential function even if the employee performs it for only a few minutes each week, and even if other employees are available to perform the task for the disabled employee. *Minnihan*, 779 F.3d

---

[12] Streck was no longer employed by Taste Traditions when his affidavit was sworn. Filing 35-3 at 11; filing 49-7 at 1.

at 812. So, for instance, in *Dropinski v. Douglas Cty., Neb.*, the Eighth Circuit affirmed a summary judgment in favor of the employer where the employee argued that the position of "automatic equipment operator" did not require a number of tasks that the employee could not perform due to his physical restrictions. 298 F.3d 704, 708-09 (8th Cir. 2002). The Court of Appeals explained that

> In addition to the written job description, it is [the employer]'s judgment that all [automated equipment operators] be able to perform general labor functions such as using a pick to pry open sewer covers, operating a jackhammer, being able to lift 100 pounds, and moving tree limbs and pieces of concrete, to name a few. In response, [the employee] says the [employer] focuses on tasks that an [automated equipment operator] almost never has to perform and that, in fact, [the employee] has never performed some of those functions during his five years of employment with [the employer]. The fact remains, though, that the potential for these functions exist in the [automated equipment operator] position and that it is difficult for the [employer] to describe with precision exactly what an [automated equipment operator] will encounter while out working on the rural roads in Douglas County. For example, an [automated equipment operator] may be required on any given day to move tree branches, adjust tailgates, move culverts, maneuver snow plows, haul and dump dirt or rock from one job site to another, and mount a sander on a truck. Each of these functions entails potential bending, twisting, squatting, and lifting over fifty pounds. [The employee]'s specific personal experience is of no consequence in the essential

> functions equation. Instead, it is the written job description, the
> employer's judgment, and the experience and expectations of all
> [automated equipment operators] generally which establish the
> essential functions of the job.

*Id.* (citation omitted). Similarly, in *Alexander*, the Court of Appeals
determined that vacuuming was an "essential function" of the position of
housekeeping supervisor at a hotel, even if not performed regularly, because
the position required the housekeeping supervisor to assist other employees.
321 F.3d at 727.

> Here, [the hotel]'s written job description for a housekeeping
> supervisor included as an essential function, "Provide assistance
> in other job classifications as determined necessary by immediate
> superior." Every [hotel] supervisor testified that this function
> included vacuuming, which is essential to housekeeping, and [the
> employee] admitted that she occasionally vacuumed, though not
> three-to-five-times a day. Given the importance of cleanliness to
> maintaining [the hotel]'s AAA four-diamond rating, the limited
> number of employees available to perform vacuuming and other
> housekeeping tasks, and [the hotel]'s persistent problems with
> housekeeping staff truancy, we agree with the district court that
> vacuuming was an essential function of the housekeeping
> supervisor position.

*Id.* And in *Summerville v. Trans World Airlines, Inc.*, the Court of Appeals
affirmed a summary judgment against an airline employee who argued that

- 18 -

handling bags and assisting passengers were not essential functions for a gate agent. 219 F.3d 855, 858 (8th Cir. 2000). In that case,

> [The employee] asserts judgment as a matter of law is inappropriate because he presented evidence that customer service agents and employees-in-charge actually performed little lifting of bags and wheelchair passengers, and, when these duties are required, other [airline] employees are regularly available to perform these tasks for him. [The airline] counters that it views lifting wheelchair passengers and bags as an essential function of the customer service agent and employee-in-charge positions; that performing these duties is required by the collective bargaining agreement; and that on overtime, holiday, and day-trading shifts, [the employee] must not only be available as a zone coordinator, but must also be available to work as a customer service agent or as an employee-in-charge.

*Id.* The Court of Appeals agreed with the airline, explaining that because the airline faced potential short-staffing problems, lifting was an essential function of the job. *Id.* at 859; *see also Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787-88 (8th Cir. 1998).

In this case, Streck's affidavit, while relevant, falls short of contradicting Taste Traditions' evidence that the Warehouse Supervisor *may* be called upon to perform tasks that would exceed Lorenzen's reported limitations. And perhaps more to the point, Streck's affidavit is insufficient to overcome Taste Traditions' "highly probative" business judgment that it is essential for its Warehouse Supervisor to be *capable* of performing those tasks if it is necessary to do so. *See Minnihan*, 779 F.3d at 812. And, of

course, aside from a passing citation to Streck's affidavit, Lorenzen offers no specific argument with respect to whether any particular tasks are essential except those that relate to overhead lifting. *See* filing 48 at 61-62.

In sum, the Court finds as a matter of law that Taste Traditions did not discriminate against Lorenzen on the basis of disability, because under the physical limitations he reported to Taste Traditions, he could not have performed the essential functions of the job, with or without accommodation. Accordingly, both his general claim of disability discrimination, and his specific claim of failure to accommodate his disability, are without merit.

## RETALIATION

Finally, Lorenzen also contends that he was retaliated against for requesting accommodation for his disability.[13] The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). A retaliation claim under the ADA requires a but-for causal connection between the employee's assertion of his ADA rights and an adverse action by the employer. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). A retaliation claim follows the same direct evidence or

---

[13] Taste Traditions contends that Lorenzen did not actually request an accommodation. Filing 37 at 36. But the absence of an express and unequivocal request is not necessarily fatal to a failure-to-accommodate claim. *Ballard*, 284 F.3d at 961. What matters are not formalisms about the manner of the request, but whether the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation. *Id.* at 962. In this case, the Court is willing to assume, without deciding, that a plaintiff who applies for a job and tells his potential employer about the limitations of his disability is implicitly asking the employer to accommodate those limitations. *See id.*

- 20 -

burden-shifting analysis employed in discrimination claims: a prima facie case of retaliation requires the plaintiff to show (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) a causal connection between the two. *Id.*

An employee or applicant who requests a reasonable accommodation has engaged in protected activity within the meaning of the ADA's anti-retaliation provision. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 908 (8th Cir. 2010). But here, the causal connection is lacking—as discussed above, the basis for Taste Traditions' decision not to hire Lorenzen was his underlying physical limitation, not his request for an accommodation. In other words, Taste Traditions had a non-retaliatory reason for refusing to hire Lorenzen: based on the information available to it, Lorenzen was unable to perform the essential functions of the job.

## CONCLUSION

For the foregoing reasons, Taste Traditions' motion for summary judgment will be granted. Having reached that conclusion, the Court will deny Lorenzen's motion for partial summary judgment as moot.

IT IS ORDERED:

1.   Taste Traditions' motion for summary judgment (filing 36) is granted.

2.   Lorenzen's motion for partial summary judgment (filing 33) is denied as moot.

3.   The plaintiff's complaint is dismissed.

4.     A separate judgment will be entered.

Dated this 29th day of September, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge